UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

---

GINA CURRY,

    plaintiff,

v.

NORTON HEALTHCARE, INC.,

    defendant.

---

**CASE NO. 3:19-CV-381-RGJ**

**ELECTRONICALLY FILED**

**JURY TRIAL DEMANDED ON SPECIFIC ISSUES**

**COMPLAINT**

Attorney for Plaintiff
Joshua D. Hicks
Gregory M. Funfsinn
Hicks & Funfsinn, PLLC
431 S. Broadway, Suite 331
Lexington, KY 40508
T: 859.286.5631; F: 859.787.0514
Email: josh@hfkylawyers.com
Email: greg@hfkylawyers.com

## PRELIMINARY STATEMENT

1. Gina Curry is a profoundly deaf individual who communicates primarily in American Sign Language ("ASL"), which is her most effective means of communication. Ms. Curry is not fully proficient in English, and has difficulty reading complex terminology and documents in written English, given her lack of English proficiency. This action concerns the lack of communication access and accommodations for Ms. Curry at Norton Hospital, where Ms. Curry underwent a cesarean section during the 37th week of her pregnancy due to severe pre-eclampsia. While at Norton Hospital, which is owned and/or operated by the Defendant, the staff and employees failed to provide Ms. Curry with the necessary interpretation and communication services, and thereby failed to ensure equal communication with her in a medical setting.

2. ASL, which is Ms. Curry's primary language, and English are two completely distinct languages that are mutually unintelligible. ASL is not "English on the hands." ASL and English are as different from one another as English is from Russian, for example.

3. Many deaf individuals, including Ms. Curry, do not have full knowledge of written English. Indeed, the median reading comprehension level in English of deaf high school graduates is fourth grade. This is because English is generally a second language (after ASL or another form of sign language) for individuals who are born deaf or become deaf before acquiring language. In addition, many deaf people acquire English as their second language later in life, and well past the critical developmental period of language acquisition. Further, while a hearing person could easily ask an employee or staff member to explain an unknown medical word or phrase, a Deaf person is unable to ask for assistance in translating unknown English words without the aid of a sign

language interpreter or other auxiliary aid.

4. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for direct doctor-patient communication through a qualified sign language interpreter. Only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips.

5. Video Remote Interpreting (VRI) is a videotelecommunication service for communication with deaf individuals that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter. The reliability of VRI as communication accommodation for deaf people is reliant upon a dedicated Internet connection or strong cellular signal on the VRI device.

6. Ms. Curry brings this lawsuit seeking injunctive and declaratory relief and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Title III of the Americans With Disability Act, 42 U.S. Code § 12181 ("ADA"); Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116; Ms. Curry also seeks compensatory and nominal damages pursuant to the RA and Section 1557.[1]

7. In addition to an award of compensatory damages, Ms. Curry seeks an award of nominal damages. It is Ms. Curry's position that an award of nominal damages would confer significant civil rights to the public as a judgment in her favor of against Defendant, regardless of the amount, would deter Defendant from discriminating against deaf individuals in the future.

## THE PARTIES

---

[1] Ms. Curry recognizes that money-damages are not available under Title III of the ADA.

8. Plaintiff Gina Curry (hereinafter "Ms. Curry") brings this action and is an individual residing in Louisville, Kentucky. Ms. Curry communicates primarily in American Sign Language and is substantially limited in the major life activities of hearing and speaking, and as such is a qualified person with a disability within the meaning of the ADA, RA, and Section 1557.

9. Defendant NORTON HEALTHCARE, INC. (hereinafter "Defendant"), is a non-profit company doing business in Louisville, Kentucky. Defendant owns, operates, and provides the services offered at Norton Hospital, which is located at 200 E. Chestnut Street, Louisville, KY 40202. Defendant is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, and is subject to the requirements of Title III of the ADA, Section 504 of the Rehabilitation Act, and Section 1557 of the ACA.

## JURISDICTION & VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Ms. Curry's claims arising under federal law.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant resides within the jurisdiction of this District, and/or a substantial part of the events that give rise to the claims occurred in this District, and/or Defendant committed discriminatory acts within the jurisdiction of this District.

## STATEMENT OF FACTS

12. Ms. Curry is a profoundly deaf individual who communicates primarily through ASL.

13. Ms. Curry requires auxiliary aids and services, like an in-person sign language interpreter, to communicate in an equivalent manner to non-disabled, hearing persons in a medical setting. Ms. Curry also requires a sign language interpreter in order to understand her doctors and

nurses and to assist her with asking questions in ASL about the meaning of complex documents that are written in English and documents that use advanced terminology.

14. Ms. Curry has knowledge of some written and spoken English. However, she is not fully proficient in comprehending written English and cannot participate in long discussions in English. Much of Ms. Curry's formal education occurred in ASL in environments designed for Deaf individuals. Specifically, she completed college at Gallaudet University in Washington, D.C., the world's only university designed to be barrier-free for Deaf and hard of hearing students.

15. Upon information and belief, Ms. Curry was admitted to Norton Hospital on August 21, 2018 while in her 37th week of pregnancy. Ms. Curry was admitted because she had elevated blood pressure and was suffering from severe pre-eclampsia. Chauncey Lattimer, Ms. Curry's significant other and the father of her baby, was present and acted as an interpreter when Ms. Curry first arrived at Norton Hospital. Although Mr. Lattimer has rudimentary sign language skills, he does not have extensive knowledge of medical terminology and is not an impartial interpreter given the circumstances.

16. Shortly after Ms. Curry was admitted, she was administered medication to induce labor. The Staff at Norton Hospital used a VRI service on an iPad to complete the admission assessment and to answer Ms. Curry's questions.

17. During the morning of August 21, 2018 and after Ms. Curry was administered drugs to induce labor, Ms. Curry requested an in-person sign language interpreter. Defendant's staff complied with Ms. Curry's request and an in-person sign language interpreter arrived at approximately 9:00 a.m. The sign language interpreter remained at Ms. Curry's bedside as her labor progressed that day.

18. After more than a dozen hours of labor, the doctor on call at Norton Hospital, Dr. Cornelia Poston, determined that Ms. Curry's labor was not progressing and a cesarean section (hereinafter "c-section") was necessary. Dr. Poston informed Ms. Curry that she could only have one person present in the operating room during the birth of her son. Ms. Curry requested that both Mr. Lattimer and the sign language interpreter be present in the operating room during her c-section so that she would be able to communicate with the hospital staff. However, Dr. Poston told Ms. Curry that pursuant to hospital policy, she could only have one person present during the birth of her son, either Mr. Lattimer, the father of her child, or the ASL interpreter, but not both.

19. Ms. Curry was upset and distressed by this predicament and insisted that she be able to have both Mr. Lattimer and the sign language interpreter present during the birth of her child. However, Dr. Poston would not relent and maintained that Ms. Curry could only have one person present during her c-section.

20. Ms. Curry was put in an impossible situation by having to choose between the presence of father of her child and a sign language interpreter during her c-section. Having the ASL interpreter in the operating room would allow Ms. Curry to communicate with her doctors and other medical staff during her c-section, throughout which she would be conscious. Without an in-person interpreter present, Ms. Curry would not be able to fully participate in the birth of her child.

21. After agonizing over this decision, Ms. Curry chose to have Mr. Lattimer present during the c-section so he could witness the birth of his child. Although Mr. Lattimer has rudimentary sign language skills, he does not have extensive knowledge of medical terminology, was not impartial under the circumstances, and was not qualified to act as sign language interpreter.

22. In the early hours of August 22, 2018, Ms. Curry underwent a c-section for the birth of her son without a sign language interpreter or other auxiliary aid in the operating room. As a result of Defendant's refusal to allow a sign language interpreter in the operating room during the c-section, Ms. Curry was unable to ask questions of the surgeon or staff, request clarification, be aware of the progress of the surgery, or participate in the birth of her son.

23. After the c-section was completed and Ms. Curry's son was born, she was left alone without an interpreter for several hours. A nurse administered pain medication to Ms. Curry neither explained what type of medication she was giving Ms. Curry nor the side effects of the medication. The medication caused Ms. Curry to become tired and unable to communicate for several hours. This caused Ms. Curry distress and confusion about the type of medication she was given and how long she would feel its effects.

24. Defendant's failure to provide Ms. Curry with auxiliary aids and services so she could be afforded equal communication both during and after her c-section on August 22, 2018 caused Ms. Curry to experience fear, anxiety, emotional distress, invasion of her civil rights, denial of self-determination, and mental anguish regarding her health and the health of her then-unborn baby.

25. Since the birth of her son, Ms. Curry has suffered from post-partum depression and struggled as a first time mother because she was unable to communicate with her medical providers both during and after her c-section, which caused her to be unable to fully participate in the birth of her son.

26. Defendant, through its staff, employees, nurses, and/or doctors, knew or should have known of its obligations under the ADA and Section 504 of the Rehabilitation Act to provide

accommodations to individuals with disabilities, including individuals who are deaf, and to develop policies to promote compliance with these statutes.

27. Defendant, through its staff, employees, nurses, and/or doctors, knew or should have known that the actions and/or inactions of its staff created an unreasonable risk of causing Ms. Curry greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person would be expected to experience.

28. Defendant, through its staff, employees, nurses, and/or doctors, failed to assess the communication abilities and needs of Ms. Curry.

29. Despite Defendant's explicit knowledge of its obligation to accommodate persons with disabilities – including individuals that are deaf – Defendant did not take adequate steps to ensure that it provided effective communication to Ms. Curry.

30. As a result of Defendant's failure to ensure effective communication with Ms. Curry, she received services that were inferior to those provided to hearing individuals.

31. Defendant discriminated against Ms. Curry with deliberate indifference to her communication needs.

32. Based on the facts alleged above, Defendant intentionally discriminated against Ms. Curry.

33. Further, Defendant was purposeful in its choices, which is sufficient to constitute intentional discrimination under the RA and ACA.

34. The harm sustained by Ms. Curry herein is the expected and foreseeable consequence of Defendant's failure to comply with the requirements and mandates of federal civil rights laws. These statutes and accompanying regulations exist to ensure that those with communication limitations will have full use of places of public accommodations. When

Defendant failed to adhere to its obligations under these statutes and regulations, it was imminently foreseeable that individuals with disabilities would sustain the exact harms alleged by Ms. Curry in this lawsuit.

35. Ms. Curry will seek Defendant's healthcare services in the future, whether by choice or necessity, due to the proximity of the hospital to her home, her ongoing need for medical care, the recent birth of her infant son at the hospital, and the familiarity of Defendant's staff and employees with her and her baby's individual medical situation and histories.

36. While Ms. Curry cannot fix a specific date that she will return to the hospital, she reasonably anticipates that she will return in the future.

37. Due to the ongoing discrimination she has encountered, Ms. Curry reasonably anticipates that she will encounter discrimination again in the near future when she next returns to the hospital.

## CLAIM 1: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

38. Ms. Curry repeats and realleges all preceding paragraphs in support of this claim.

39. At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendant's conduct.

40. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to Defendant's conduct.

41. At all times relevant to this action, Ms. Curry had substantial limitations to the major life activities of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

42. At all times relevant to this action, Defendant offered a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

43. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

44. Defendant discriminated against Ms. Curry, solely on the basis of disability, by denying plaintiff equal access to the services, programs, and benefits the Defendant offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of 29 U.S.C. § 794.

45. Defendant also discriminated against Ms. Curry, solely on the basis of disability, by denying plaintiff's reasonable accommodation requests, in violation of 29 U.S.C. § 794.

46. Ms. Curry is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

47. Ms. Curry is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a).

## CLAIM 2: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

48. At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et seq. has been in full force and effect and has applied to Defendant's conduct.

49. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to the Defendant's conduct.

50. At all times relevant to this action, Ms. Curry has been substantially limited in the major life activities of hearing and speaking, and is an individual with a disability within the

meaning of the ADA, 42 U.S.C. § 12102(2).

51. Defendant owns and operates a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(F).

52. Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

53. Title III of the ADA further provides that "[i]t shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

54. Federal regulations implementing Title III of the ADA provide that a public "shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c).

55. Federal regulations implementing Title III of the ADA further provide that a public entity "shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services" 28 C.F.R. § 36.303(a).

56. Federal regulations implementing Title III of the ADA further provide that a public entity "shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities…" 28 C.F.R. § 36.302.

57. Based on the above allegations, Defendant discriminated against Ms. Curry, on the

basis of disability, in violation of Title III of the ADA and its implementing regulations.

58.     As set forth above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Ms. Curry.

59.     Ms. Curry is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

## CLAIM 3: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

60.     Ms. Curry repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

61.     At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116 was in full force and effect and applied to Defendant's conduct.

62.     At all times relevant to this action, Section 1557, 42 USC § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

63.     At all times relevant to this action, Ms. Curry had substantial limitations to the major life activity of hearing and speaking, and was an individual with disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 USC § 18116.

64.     At all times relevant to this action, Ms. Curry's primary language for communication was American Sign Language and not English.

65.     At all times relevant to this action, Defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

66. Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 USC § 18116.

67. Defendant discriminated and continues to discriminate against Ms. Curry solely on the basis of disability, by denying her equal access to the services, programs, and benefits that Defendant offers to other individuals and by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1157, 42 U.S.C. § 18116.

68. Defendant discriminated against Ms. Curry by failing to ensure effective communication through the providing of qualified sign language interpreters on-site during her c-section.

69. Defendant discriminated against Ms. Curry by denying her reasonable accommodation requests.

70. Ms. Curry is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendant's discriminatory conduct as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

71. Ms. Curry is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Ms. Curry respectfully prays that this Court grant the following relief against Defendant:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's policies, procedures, and practices subjected Ms. Curry to unlawful discrimination in violation of the RA, ADA, and Section 1557;

B. Issue an injunction forbidding Defendant from implementing or enforcing any policy, procedure, or practice that denies deaf individuals, or their companions, meaningful access to and full and equal enjoyment of Defendant's facilities, services or programs;

C. Issue an injunction ordering Defendant:

    i. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Ms. Curry or other deaf individuals by failing to provide effective communication;

    ii. to develop, implement, promulgate, and comply with a policy requiring that when a deaf individual requests an in-person interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendant;

    iii. to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendant will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf persons;

    iv. to develop, implement, promulgate, and comply with a policy to ensure that deaf individuals are able to communicate through the most appropriate method under the circumstances;

      v.      to train all their employees, staffs, and other agents on a regular basis about the rights of individuals who are deaf under the ADA, RA, and ACA;

D. Award to Ms. Curry:

    i.    Compensatory and nominal damages pursuant to the RA and ACA;

    ii.    Reasonable costs and attorneys' fees pursuant to the ADA, RA, and ACA;

    iii.    Interest on all amounts at the highest rates and from the earliest dates allowed by law;

    iv.    Any and all other relief that this Court finds necessary and appropriate.

### DEMAND FOR JURY TRIAL

Ms. Curry demands a trial by jury for the issues of (1) the injuries she suffered as a result of Defendant's discriminatory conduct; and (2) the quantum of damages that should be awarded.

Dated: May 24, 2019

                        Respectfully Submitted,

                        By:    */s/ Joshua D. Hicks*
                                Joshua D. Hicks

                        Joshua D. Hicks
                        Gregory M. Funfsinn
                        Hicks & Funfsinn, PLLC
                        431 S. Broadway, Suite 331
                        Lexington, KY 40508
                        T: 859.286.5631; F: 859.787.0514
                        Email: josh@hfkylawyers.com
                        Email: greg@hfkylawyers.com